UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------X
ERIC AMOATENG,

  Petitioner,      MEMORANDUM AND ORDER

 -against-        Civil Action No.
              CV-08-5273(DGT)
UNITED STATES OF AMERICA,

  Respondent.

---------------------------------X

TRAGER, J.:

 After pleading guilty to conspiracy to import one or more kilograms of heroin pursuant to 21 U.S.C. §§ 963 and 960(b)(1)(A), Eric Amoateng ("petitioner") was sentenced to 120 months imprisonment. Petitioner now moves pursuant to 28 U.S.C. § 2255 to vacate or reduce his sentence. For the reasons set forth below, the motion is denied.

**Background**

(1)

 The charges against petitioner resulted from his involvement in a heroin importation conspiracy. On November 9, 2005, Customs and Border Protection ("CBP") officials uncovered packages of heroin in a cargo shipment at Newark International Airport ("Newark"). Id. ¶ 2. The name listed on the cargo was that of co-conspirator, Niil Okai Adjei ("Adjei"). Id. Adjei became

1

acquainted with petitioner in Ghana when petitioner was running for a seat in the Ghanaian parliament.  Id. ¶ 5.  After winning election, petitioner informed Adjei that he needed his assistance to transport cocaine hidden in ceramic products to the United States.[1]  PSR ¶ 6.  Petitioner agreed to pay Adjei $2,500 for each kilogram of drugs he transported, which Adjei believed would be four kilograms.  Id.

Petitioner shipped the cargo to a storage facility at John F. Kennedy International Airport ("JFK").  Id.  CBP officials removed the heroin when the cargo passed through Newark and delivered the remaining cargo to JFK.  Id.  On November 11, 2005, petitioner and Adjei arrived at the JFK storage facility with a van and transported the cargo to American Self Storage in Staten Island, New York.  Id. ¶ 3.  On November 12, 2005, CBP officials arrested petitioner and Adjei when they returned to inspect their cargo.  Id.

Petitioner was charged with conspiracy to import heroin and related offenses.  While in custody awaiting trial, Adjei encountered petitioner several times at the Metropolitan Detention Center.  PSR ¶ 11.  During the meetings, petitioner tried to induce Adjei to take full responsibility for the

---

[1] Because petitioner had previously shipped similar cargo, exceeding the three shipment limitation instituted after the September 11, 2001 attacks, if he did not use Adjei's name for the shipment, he would have needed to pay for a broker.  PSR ¶ 6.

2

importation scheme.  Id.  Petitioner indicated that Adjei would never see his family again if he refused to take sole responsibility.  Id.  Petitioner gave Adjei a letter that stated Adjei was entirely to blame for the drug shipment and instructed him to copy the letter in his own handwriting and submit it to his attorney.  Id.  Instead, Adjei gave petitioner's original letter to the government.  PSR ¶ 12.  The letter also contained inducements petitioner promised to Adjei for taking all the blame for the shipment, such as money to "retain a competent attorney," money in a Ghanaian bank account, a car, funeral expenses and the costs of running a farm.  Id. ¶ 12.

Petitioner participated in proffer sessions with the government and entered into a plea agreement waiving his right to appeal or otherwise challenge his conviction if sentenced to 235 months or less.  Plea Agreement ¶¶ 1, 4.  Pursuant to the plea agreement, he pleaded guilty to one count of conspiracy to import heroin.  At the plea hearing on March 19, 2007, Magistrate Judge Mann questioned petitioner about whether he understood that he was waiving his right to appeal by entering into the plea agreement.

> THE COURT: I want to point out a particular provision of this agreement.  Paragraph 4 provides in substance and in part that you agree not to file an appeal or otherwise challenge your conviction or sentence in the event the Court imposes a term of imprisonment of 235 months or below.  The 235 months is the upper end of the range

> estimated by the Government without taking
> into account the additional one level
> reduction that the Government has agreed to
> move for in your behalf. Now under the terms
> of this agreement you and your lawyer are
> free to argue before you're sentenced that
> you should be sentenced – you should not be
> sent to prison for as long as 235 months.
> You and he can make any and all good faith
> arguments as to why you should have a lower
> sentence. But because of the language in
> Paragraph 4, once Judge Trager sentences you,
> as long as he does not send you to prison for
> more than 235 months, that is the end of the
> matter. You've agreed that in that case you
> will not file an appeal or otherwise
> challenge your conviction or sentence. Do
> you understand that?
>
> THE DEFENDANT: Yes, Your Honor.

Plea Hr'g Tr. 17-18.

Before being sentenced, petitioner objected to the PSR's recommendation of a sentencing enhancement for obstruction of justice for his attempt to coerce Adjei into taking all the blame. However, his arguments were rejected, and the enhancement was applied. His offense level was also reduced by two and three levels, respectively, for safety valve and acceptance of responsibility. The resulting offense level was 35, which carried a sentencing range of 168 to 210 months. Sentencing Tr. 4. Nevertheless, petitioner was sentenced to the statutory minimum of 120 months. Id. at 13. Petitioner did not appeal his sentence. Patten Aff. 4-5.

Petitioner now brings the instant motion based on ineffective assistance of counsel at sentencing and post-sentencing. In particular, petitioner claims that counsel was ineffective for failing (1) to argue that petitioner was entitled to a downward departure pursuant to the safety valve provision of 18 U.S.C. § 3553(f), (2) to object to the obstruction of justice enhancement, which was applied, even though petitioner requested counsel to object to it and (3) to file an appeal regarding the non-application of the safety valve provision. Pet'r Mot. 4-7. In support of his last contention, petitioner claims, in a document he styles an affidavit, that he asked counsel to file an appeal on his behalf. Pet'r. Aff.

Counsel was directed to respond to these allegations, which he did by filing an affidavit. First, counsel points out that a safety valve reduction was applied to petitioner's total offense level. Patten Aff. 2. Next, counsel explains that petitioner admitted, in proffer sessions, his involvement in creating the letter with which he intended to inculpate Adjei. Id. at 2-3. Thus, counsel explains that he could not object to what petitioner already admitted to be true. Id. Furthermore, counsel contends that petitioner's admission of attempting to coerce Adjei was a factor in persuading the government to offer him the safety valve reduction. Id. 3. Lastly, counsel contends

that he discussed with petitioner the improbability of succeeding on appeal because petitioner was sentenced below the sentencing range recommended by the Federal Sentencing Guidelines ("Guidelines").  Id. 4.  Counsel also asserts that petitioner told him that he understood petitioner would likely not succeed on appeal and did not request counsel to file an appeal on his behalf.  Id. 4-5.

In opposition, the government contends that petitioner's claims are procedurally barred because petitioner waived the right to appeal his sentence in the plea agreement.  Gov't Resp. 5-6.  Furthermore, the government contends that counsel was not ineffective because petitioner was granted a safety valve downward departure, in the course of which he admitted the conduct which was the basis for the enhancement.  Thus, defense counsel had no reason to object to the sentencing enhancement. Id. 6-7.

**Discussion**

**(1)**

**Waiver**

The government urges the Court to dismiss the instant motion as procedurally barred because the petitioner knowingly and voluntarily waived his right to challenge his conviction.  The Second Circuit has routinely enforced knowing and voluntary

6

waivers of the right to appeal where the petitioner's sentence is within or below the Guidelines range stipulated by the plea agreement. See, e.g., United States v. Monzon 359 F.3d 110, 121 (2d Cir. 2004) (enforcing waiver provision where defendant was sentenced within Guidelines range and record clearly demonstrated waiver was knowing and voluntary); United States v. Djelevic, 161 F.3d 104, 106 (2d Cir. 1998) (enforcing waiver of appeal where court applied sentence within Guidelines range).[2] In determining whether a waiver was knowing and voluntary, the Second Circuit has considered the defendant's (1) signature on a plea agreement, (2) statements to the magistrate judge that defendant has read and understood the agreement and (3) failure to claim in a § 2255 motion that he did not understand the waiver in the plea agreement as indication that a waiver of appeal was knowing and voluntary. Garcia-Santos v. United States, 273 F.3d 506, 508 (2d Cir. 2001).[3]

---

[2] Direct and collateral attacks are subject to the same analysis. See Philippe v. United States, No. 04 CV 3804 (CBA), 2007 WL 13414, at *2 (E.D.N.Y. Jan. 2, 2007).

[3] The Second Circuit has recognized other limited exceptions to a waiver agreement where (1) the sentence imposed was based on "ethnic, racial or other prohibited biases," (2) the government breached the plea agreement or (3) the sentencing court did not provide a rationale for the sentence. United States v. Gomez-Perez, 215 F.3d 315, 319 (2d Cir. 2000). Here, there is no indication that the sentence was based on a prohibited bias, that the government breached the plea agreement and that the sentencing court failed to rationalize the sentence imposed on petitioner. Thus, these limited exceptions do not apply.

Here, petitioner was sentenced to the statutory minimum of 120 months, which is below the Guidelines range of 168 to 210 months. Sentencing Tr. 13. Petitioner does not challenge the validity of his plea agreement or contend that counsel misled him when he entered into it. Plea Hr'g Tr. 12:12-25. Petitioner also does not claim in his motion that he did not understand the waiver of appellate rights in the plea agreement. Further, petitioner signed his plea agreement and stated to the magistrate judge that he understood that he was not permitted to file an appeal or file a § 2255 motion if sentenced below 235 months. See Plea Hr'g Tr. 17-18. Thus, petitioner's § 2255 motion is procedurally barred because he knowingly and voluntarily waived his right to appeal in the plea agreement.

**(2)**

**Ineffective Assistance of Counsel**

Even if the appeal waiver provision does not bar consideration of petitioner's § 2255 motion, his claims of ineffective assistance of counsel would fail on the merits. Petitioner claims that defense counsel was ineffective for failing (1) to argue that petitioner was entitled to a downward departure pursuant to the safety valve provision of 18 U.S.C. § 3553(f), (2) to object to the obstruction of justice enhancement and (3) to appeal this Court's decision not to apply

the safety valve provision. Pet'r Mot. 4-7.

To establish ineffective assistance of counsel a petitioner must show that (1) "counsel's representation fell below an objective standard of reasonableness" and (2) counsel's representation was so deficient that it "prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687-88 (1984). To satisfy the "prejudice" prong of the Strickland test, the petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

**a. Failure to Argue for Safety Valve Relief**

Petitioner claims that counsel erred by not arguing for a safety valve reduction at sentencing. Section 5C1.2 of the Guidelines allows courts to sentence a defendant below the mandatory minimum if the defendant meets the criteria of 18 U.S.C. § 3553(f), the safety valve provision. To qualify for the safety valve, the defendant must have "truthfully provided the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan." Guidelines § 5C1.2(a)(5).

Here, the Court granted a two-point reduction pursuant to the safety valve provision. Sentencing Tr. 4:5-8. As a result, two

9

levels were subtracted from petitioner's offense level. Sentencing Tr. 4:5-8. Accordingly, petitioner cannot demonstrate prejudice, and his claim that counsel was ineffective for not arguing for a safety valve reduction fails.

**b. Failure to Object to the Obstruction of Justice Enhancement**

Petitioner next claims that counsel erred by not objecting to his sentencing enhancement for obstruction of justice. Section 3C1.1 of the Guidelines provides that a sentencing enhancement applies where a "defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation." Guidelines § 3C1.1. The obstruction of justice enhancement applies where conduct involves "threatening, intimidating, or otherwise unlawfully influencing a co-defendant, witness or juror, directly or indirectly, or attempting to do so." Guidelines § 3C1.1 n.4(a); see also United States v. Peterson, 385 F.3d 127, 139-40 (2d Cir. 2004) (applying the obstruction of justice enhancement where the defendant sent letters to co-defendants from jail urging them to maintain untrue versions of events and generally not to cooperate with the government); United States v. White, 240 F.3d 127, 138 (2d Cir. 2001) (explaining that the obstruction of justice enhancement within the meaning of Note 4(a) includes telling a co-arestee to lie to police). The obstruction of justice enhancement is

intended only where the defendant willfully attempts to disrupt the administration of justice.  See, e.g., United States v. Stroud, 893 F.2d 504, 507 (2d Cir. 1990)(holding that "mere flight" after a crime without other actions is not sufficient to warrant an obstruction of justice enhancement); United States v. Khimchiachvili, 372 F.3d 75, 80 (2d Cir. 2004), vacated on other grounds sub nom. Berwick v. United States, 544 U.S. 917 (2005)(explaining that the enhancement must be based on "conduct that willfully interferes with or attempts to interfere with the disposition of the criminal charges against a defendant").

   Here, petitioner intended to interfere with the government's investigation by attempting to coerce Adjei to take all the blame for the offense.  See PSR ¶ 21.  Petitioner admitted his involvement in obstructive actions during proffer sessions and in a letter responding to the PSR.  Additionally, Adjei furnished to the government the letter in which petitioner tried to shift all the blame to him.  Petitioner would have, thus, been subject to the enhancement regardless of his truthful statements.  See PSR ¶ 21.

   In light of the overwhelming evidence of petitioner's intentional attempt to obstruct justice, petitioner cannot demonstrate prejudice.  Thus, petitioner's claim that counsel was ineffective for failing to object to the obstruction of justice enhancement is without merit.

**c. Failure to Appeal**

Petitioner's final claim is that counsel was ineffective for failing to file an appeal on his behalf. This claim is also without merit.

As discussed above, the Second Circuit routinely upholds knowing and voluntary waivers of appeal. In his plea agreement, petitioner waived his right to appeal his sentence. Thus, counsel had no reason to file an appeal. However, petitioner claims he, nonetheless, asked counsel to file an appeal. Counsel claims he would have been glad to file an appeal but petitioner never asked him to do so.

A petitioner's failure to provide background facts regarding counsel's alleged error may be fatal to his ineffective assistance of counsel claim. Indeed, "vague, conclusory, palpably false or patently frivolous" accusations do not meet the <u>Strickland</u> standard. <u>United States v. Malcolm</u>, 432 F.2d 809, 812 (2d Cir. 1970); <u>see also</u> <u>Polanco v. United States</u>, No. 99 Civ. 5739 (CSH), 2000 WL 1072303, at *10 (S.D.N.Y. Aug 3, 2000) ("[W]holesale and vague accusations are patently insufficient to meet the <u>Strickland</u> standard."); <u>Matura v. United States</u>, 875 F. Supp. 235, 237-238 (S.D.N.Y. 1995) (rejecting the "conclusory" claim that counsel did not conduct an adequate investigation that allegedly would have established petitioner's innocence).

12

Furthermore, factual discrepancies between affidavits can be resolved by evaluating the record and do not require an evidentiary hearing where an ineffective assistance claim is "generic" and based on petitioner's "own self-serving and improbable assertions." Philippe v. United States, No. 04 CV 3804 (CBA), 2007 WL 13414, at *3 (E.D.N.Y. Jan. 2, 2007) (quoting Chang v. United States, 250 F.3d 79, 85-86 (2d Cir. 2001) (internal quotation marks omitted)); see also United States v. Aiello, 814 F.2d 109, 113 (2d Cir. 1982) (explaining that "[a]iry generalities" and "conclusory assertions" are not sufficient to warrant an evidentiary hearing); Powell v. United States, No. 1:07-CV-1199, 2008 WL 4426629, *2 (N.D.N.Y. Sept. 25, 2008) ("The disparity in specificity between . . . two affidavits [led] the court to conclude" a hearing was not necessary).

In Philippe, counsel submitted an affidavit explaining that the petitioner never asked that he file an appeal, which contradicted the petitioner's affidavit claiming that he did request an appeal. 2007 WL 13414 at *3. Because the petitioner did not present any evidence about his allegations or explain the circumstances surrounding the alleged request, the court, relying on the record, found the petitioner's claim to lack credibility. Id.

Here, petitioner's affidavit merely states, "I asked counsel Patten to appeal my sentence because the Safety Valve condition

covers me, but it was not applied to my sentence." Pet'r Aff. However, counsel, in his affidavit, affirms that he fully explained to petitioner that an appeal was not likely to succeed since petitioner received the lowest possible sentence. Patten Aff. 3-5. Moreover, counsel explained that petitioner understood this conversation and did not request counsel to file an appeal. Id. While petitioner points out which issue he claims he wanted appealed, he provides no further specificity. By contrast, counsel recounts, in detail, conversations he had regarding filing an appeal and petitioner's chances of success. When compared to counsel's affidavit, petitioner's assertions appear self-serving and, ultimately, not credible. Moreover, petitioner does not explain or present evidence to support his claim. See Philippe, 2007 WL 13414 at *3. Finally, petitioner's assertion seems even more improbable when one considers that he did obtain the safety valve he sought. The record thus demonstrates that petitioner's contentions are self-serving and do not support a finding of ineffective assistance of counsel.

## Conclusion

Petitioner has shown no basis for relief under § 2255, and, therefore, his motion is denied. In addition, because petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. See 28 U.S.C. § 2253(c).

Dated:   Brooklyn, New York
         July 27, 2009

                                SO ORDERED:


                                     /s/
                                David G. Trager
                                United States District Judge